LAW OFFICE OF PAUL GATTONE
Paul Gattone, AZ Bar No. 012482
gattonecivilrightslaw@gmail.com
301 South Convent Avenue
Tucson, Arizona 85701
Tel: (520) 623-1922
Fax: (520) 882-3066

MACDONALD HOAGUE & BAYLESS
Jeffrey L. Taren, WA Bar No. 50275
*Pro Hac Vice Petition Pending*
JeffreyT@mhb.com
705 2nd Avenue, Suite 1500
Seattle, WA 98104
Tel: (206) 694-1638
Fax: (206) 343-3961

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CHRISTINE NILSSON,<br><br>        Plaintiff,<br><br>   v.<br><br>CRYSTAL BAY HOMEOWNERS' ASSOCIATION, an Arizona nonprofit corporation; KINNEY MANAGEMENT SERVICES, INC., an Arizona corporation; and SCOTT DARNALL, an individual,<br><br>        Defendants. | Case No:<br><br>COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF |

NOW COMES PLAINTIFF, Christine Nilsson by her attorneys MacDonald Hoague & Bayless and Paul Gattone and complains against Defendants Crystal Bay Homeowners Association, Kinney Management Services and Scott Darnall as follows:

## I.    INTRODUCTION

1.01   This is an action for temporary and permanent injunctive and declaratory relief

COMPLAINT - 1

1  and actual and punitive damages under Title VIII of the Civil Rights Act of 1968, as amended by
2  the Fair Housing Amendments Act of 1988 (the "Fair Housing Act"), 42 U.S.C. §§ 3601-3619,
3  for Defendants' unlawful refusal to accommodate the medical needs of Plaintiff, a disabled
4  military veteran.[1]  Defendants have repeatedly refused to allow Plaintiff to park her handicap
5  accessible van, needed to transport her service animal and mobility assistive devices, on her own
6  privately owned driveway.  Despite her detailed request for accommodation complete with
7  medical documentation and military records showing her disabled status and need for
8  accommodation, Defendants have issued Plaintiff multiple parking violations and have now
9  threatened her with fines and legal action claiming, falsely, that her handicap accessible van is a
10 commercial vehicle which is not allowed to be parked at her home.

## II.     JURISDICTION AND VENUE

2.01    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3) and 42 U.S.C. §3613(a)(1).

2.02    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the Plaintiff's allegations occurred in Chandler, Arizona, the subject property is located in this District, and Defendants reside and/or do business in this District.

## III.    THE APPLICABLE STATUTE

3.01    42 U.S.C. §3604(f)(2) of the Fair Housing Amendments Act (FHAA) makes it illegal to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling because of handicap of:

    A.    That person; or

    B.    A person residing in or intending to reside in that dwelling after it is so sold, rented or made available; or

---

[1] In referring to the Fair Housing Amendments Act (FHAA), the Ninth Circuit "uses the terms 'disability' and 'disabled,' except when referring to the FHAA's statutory language, which uses 'handicap' and 'handicapped.'" *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1146 n. 2 (9th Cir. 2003).  The Court "assign[s] these terms identical meaning." *McGary v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir. 2004) (citing *id.*).

COMPLAINT - 2

C.       Any person associated with that person.

3.02     For the purposes of the above subsections, discrimination includes, "A refusal to make reasonable accommodations in rules, policies, practices or services, when such services may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  The legislative history of the disability provisions of the Fair Housing Act makes it clear that Congress intended the FHAA to trump private arrangements that impeded the enjoyment of rights by people with disabilities.[2]  The FHAA's legislative history confirms that its reach extends to prohibit discrimination based on the enforcement of private agreements, such as the sale of newly constructed homes and lots.  *Gittleman v. Woodhaven Condo. Assn.,* 972 F. Supp. 2d 894, 899 (D.N.J. 1997) (citing H.R. Rep. No. 100-711, 100th Cong., 2d *Sess., reprinted in* 1988 U.S.C.C.A.N. 2173, 2184-85); *see also Smith v. Brown*, No. C10-1021 MJP, 2010 WL 3120203, at *7 (W.D. Wash. Aug. 9, 2010).

3.03     Congress adopted the reasonable accommodation provision to require housing providers to make exceptions to generally applicable rules for people with disabilities.  In adopting the reasonable accommodation provision, Congress explained that:

> A discriminatory rule, policy, practice or service is not defensible simply because that is the manner in which such rule or practice has traditionally been constituted. This section would require that changes be made to such traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling.

3.04     The Joint Statement of the United States Department of Housing and Urban Development and the Department of Justice, entitled, "Reasonable Accommodation Under the Fair Housing Act" (May 17, 2004), states, in part, that:

> A 'reasonable accommodation' is a change, exception, or adjustment to a rule,

---

[2] With respect to state or local laws, the Fair Housing Act provides that "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid." 42 U.S.C. § 3615.

policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces.  Since rules, policies, practices, and services may have a different effect on persons with disabilities than on other persons, treating persons with disabilities exactly the same as others will sometimes deny them an equal opportunity to use and enjoy a dwelling.  The Act makes it unlawful to refuse to make reasonable accommodations to rules, policies, practices, or services when such accommodations may be necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling.

### IV.    PARTIES

4.01    Plaintiff Christine Nilsson is a disabled military veteran who resides in Chandler, Arizona.  After leaving the military with a 50% disability, Ms. Nilsson served as an investigative agent with the U.S. Department of Homeland Security where she was injured on duty and subsequently granted a Disability Retirement in November 2019.  As a result of her injuries, Ms. Nilsson has a severe mobility impairment which interferes with her ability to walk and requires her to use assistive devices including a cane, a walker, a service animal and other adaptive equipment.  Ms. Nilsson is therefore a person with a disability within the meaning of §802(h) of the Fair Housing Act, 42 U.S.C. §3602(h).  Plaintiff has resided in her single family detached home within the Crystal Bay Homeowners' Association since 1995.  Ms. Nilsson is an aggrieved party as that term is defined in the Fair Housing Act.

4.02    Defendant Crystal Bay Homeowners Association (hereinafter referred to as the "HOA") is an Arizona nonprofit corporation that regulates a community consisting of 169 homes located on the south side of Ray Road just east of 101 Freeway in Chandler, Arizona.  The HOA enforces the Declarations of Covenants, Conditions, Restrictions, Reservations and Easements for Crystal Bay.  The HOA is governed by a Board of Directors and employs Defendant Kinney Management Services, Inc. as its agent to help manage the HOA.  All of the actions described herein by Kinney were taken as agent for and on behalf of the HOA.

4.03    Defendant Kinney Management Services, Inc. (hereinafter referred to as "Kinney") is an Arizona corporation doing business within Maricopa County.  Kinney is in the business of managing communities such as Crystal Bay on behalf of HOAs.  At all times

relevant to this complaint, Kinney acted as the management agent for Defendant HOA and was responsible for enforcing parking and other Rules and Regulations at Crystal Bay. All of the actions described herein on the part of Kinney were taken on its own behalf and as agent for Defendant HOA.

4.04   Defendant Scott Darnall is an individual who works for Kinney Management Services. More specifically, Defendant Darnall is the property manager of the Defendant HOA. In that capacity, Darnall was responsible for implementing the policies of the HOA Board, including the sending of Violation Notices and participated in the denial of the Plaintiff's request for accommodation. All of the actions of Defendant Darnall were taken as agent for Defendants Kinney and HOA.

## V.   FACTUAL ALLEGATIONS

5.01   On or about 1995, Plaintiff purchased her single-family residence located at 921 N. Woodburne Drive, Chandler, AZ 85224. Plaintiff's residence is within the Crystal Bay subdivision and as such she is a member of the Crystal Bay Homeowners Association.

5.02   In July of 2003, Plaintiff was honorably discharged from the Navy with a service-related disability. Ms. Nilsson was awarded a 50% disability from the Department of Veterans Affairs.

5.03   After her service in the Navy, Plaintiff became employed as a Special Agent for the United States Department of Homeland Security.

5.04   In 2019, Ms. Nilsson suffered a job-related injury that left her permanently and totally disabled. In November of 2019, she was approved by the federal Office of Personnel for a 100% disability retirement due to her multiple medical conditions, including complex regional pain syndrome, osteoarthritis and a variety of neuromuscular disorders.

5.05   On January 20, 2020, Plaintiff sent an email to Defendant Darnall notifying him and Kinney that she had a "progressive nerve disorder" and that as a result of this disorder she would be purchasing a "Mobility Accessible Vehicle (Van) as transportation." She further notified Darnall at that time that she had been determined to be 100% disabled by the federal

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

government and offered to make her VA records available if necessary. She asked Mr. Darnall for approval to park a Mobility Accessible Vehicle in the driveway of her residence. She notified him that her request for approval was "time sensitive" as she was about to make a major purchase and she wanted approval of the HOA before making the purchase.

5.06 On January 22, 2020, Defendant Darnall wrote Plaintiff that: "Your request is for the Board to allow the vehicle in violation of the CC&Rs. The problem is that the Board has a fiduciary responsibility to enforce the CC&Rs. I'm sorry but, they have not yet decided to grant a waiver or even if they are able to do that."

5.07 Ms. Nilsson made another request to Mr. Darnall on January 24, 2020. She informed him that he had a duty not to discriminate against her as a disabled resident. Darnall responded by acknowledging that since there is a disability involved, there "may be a legal reason to vary from the governing documents." Nevertheless, he informed her that he would not be able to provide her with an immediate response as the Board had asked him to get a legal opinion on the issue.

5.08 On January 21, 2020, at 2:20:24 PM, Mr. Darnall wrote Plaintiff that "The board is communicating on this issue and has not yet come to a conclusion as it appears to violate the CC&Rs."

5.09 On January 30, 2020, Ms. Nilsson sent an email to Darnall informing him that she had spoken with one of the Board members who had told her that he believed her request was for a "commercial vehicle." Ms. Nilsson informed Darnall that she was not purchasing a commercial vehicle but that the van to be purchased was a passenger vehicle that is wheelchair accessible.

5.10 By letter dated December 14, 2020, Plaintiff was granted financial assistance from the Department of Veterans Affairs to purchase a vehicle plus adaptive equipment to assist her disability.

5.11 On June 1, 2021, Dr. Richard H. Carmona, 17th Surgeon General of the United States, provided Plaintiff with the following letter:

1  June 1, 2021

2  RE: Special Agent (Ret.) Christine Nilsson

3  To Whom It May Concern:

4  SA (Ret.) Christine Nilsson has been known to me for over 3 decades. During this time, she has sustained injuries and chronic pain syndromes for which she would benefit from the use of a service dog.

6  Thank you for your consideration.

7  Sincerely,

8  Richard H. Carmona, M.D., M.P.H., F ACS
9  17th Surgeon General of the United States

10  5.12   On May 23, 2021, Defendant HOA sent Plaintiff a Notice of Violation demanding that she remove her handicap accessible van, which they referred to as a "commercial vehicle," from her driveway.

13  5.13   On May 27, 2021, Plaintiff sent Defendant Darnall an email informing him that her vehicle was not a commercial vehicle. She reminded him that she was a disabled veteran and that the vehicle was a passenger vehicle to aid her disability.

16  5.14   At the same time that she sent her email to Darnall, Plaintiff sent a letter to the Defendant HOA and to Kinney informing them as well that her vehicle was not a commercial vehicle but was purchased through a federal grant as an accessibility equipped motor vehicle to aid her disability. She notified Defendants that "It is parked on my driveway without creating any obstructions to the egress allowing pedestrians and/or vehicle traffic."

21  5.15   On May 28, 2021, Plaintiff was provided with a letter from the car dealership where she purchased her accessible vehicle which she forwarded to the Defendant HOA. The letter stated:

To whom it may concern,

One of our customers reached out to us for a letter confirming their purchase intent. We sold 2021 Ford Transit Van to Christine Nilsson with the intent to register it as a personal use vehicle. The vehicle will also be having a disability upfit as requested from the Department of Veterans Affairs. The VA

COMPLAINT - 7

assisted Ms. Nilsson with the purchase of this vehicle. It is the understanding of the Faricy Boys Ford and the VA that this vehicle will be used personally and not for business or commercial purposes as her motor vehicle registration states. As a Dealership, a Commercial Vehicle is registered with intent for Business or Commercial use, this vehicle was registered for personal use. Please feel free to contact me with any questions I may be able to assist with.

> Ben Herold Sales Manager
> Faricy Boys Ford

5.16   On June 2, 2021, Plaintiff sent Darnall another email. This one stated as follows:

Dear Scott Darnall, Community Manager
Kinney Management Services / Crystal Bay Homeowners Association,

I live in the Crystal Bay Subdivision at 921 N. Woodburne Drive on Lot #71. I have a disability as defined under the Fair Housing Act, and am having difficulty with parking.

I respectfully request the a parking accommodation under the FHA: provision of an accessible, parking space on my residential driveway for my personally owned Ford Transit Van accessibility equipped for myself and my service animal. I am requesting that the the approval of the parking space be located at my residence 921 N. Woodburne Drive Chandler, Arizona 85224. Without this accommodation, I am unable to equally use and enjoy the housing subdivision to the same extent as residents without disabilities.

I am making this request for a reasonable accommodation because of my disability. I have a physical impairment that substantially limits walking. As a result, on occasion I am required to use a mobility device. I am in possession of both a valid disabled parking placard and plate issued by the Arizona Department of Motor Vehicles.

If there is any expense to providing this reasonable accommodation, I am requesting that you cover the cost. According to the U.S. Department of Housing and Urban Development (HUD), housing providers are responsible for the costs of parking accommodations.

*Courts have treated requests for parking spaces as requests for a reasonable accommodation and have placed the responsibility for providing the parking space on the housing provider, even if provision of an accessible or assigned parking space results in some cost to the provider. For example, courts have required a housing provider to provide an assigned space even though the housing provider had a policy of not assigning parking spaces or had a waiting list for available parking. However, housing providers may not require persons with disabilities to pay extra fees as a condition of receiving accessible parking spaces. Providing a parking accommodation could include creating signage, repainting markings, redistributing spaces, or creating curb cuts. This list is not exhaustive.* See http://www.hud.gov/offices/fheo/library/huddojstatement.pdf at Answer to Question 11 in Joint Statement of the Department of Housing and Urban Development (HUD) and

> Please provide a response within 7 business days.
>
> Your prompt consideration of this reasonable accommodation request is appreciated. If you believe that I have not provided sufficient documentation to support our request, please engage in the interactive process to help us understand what additional documentation is needed.
>
> I look forward to resolving this matter informally. I appreciate your attention to this matter and look forward to your written response.
>
> Sincerely,
>
> Christine Nilsson

5.17  On June 3, 2021, Defendant Darnall notified Plaintiff that he had forwarded her information to the HOA Board. He notified her that he had "no authority to resolve an issue contrary to the CC&Rs."

5.18  On June 3, 2021, Plaintiff submitted a second letter to the Board from her car dealership to clarify any ambiguities. That letter stated:

> To whom it may concern,
>
> For clarification - Ms. Nilsson informed us after sending the letter to her HOA that somehow our clarifying statement regarding how a dealership registers a commercial vehicle infers and/or confirmed that her Ford Transit Van is a Commercial Vehicle. The statement was provided to assist the HOA with what is and is not a commercial vehicle. It is unfortunate that our statement was misinterpreted by Kenney Management Services employee Scott Darnell. The Ford Transit Van that was purchased by Ms. Nilsson through our dealership is NOT a commercial vehicle and is not defined as such.
>
> Ben Herold
> Sales Manager
> Faricy Boys

5.19  Despite her multiple requests for accommodation, on June 3, 2021, Defendant HOA issued Plaintiff a Second Notice of Violation and again demanded that she remove her vehicle.

5.20  On June 9, 2021, Ms. Nilsson notified Defendants that they were violating the Fair Housing Act. In a good faith attempt to obtain compliance with the law, Ms. Nilsson sent Defendants a copy of her handicap license plate. She further informed the Defendants:

> I am sure as a management company in Arizona representing an HOA you are

COMPLAINT - 9

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

> familiar with the laws that govern disabled residence and you know that DMV does not provide a disability plate for commercial use vehicles. AZ DMV does however allow a disabled person to get a handicap placard to place in the windshield of a commercial vehicle which is to be used only by the disabled person. In my case the Arizona registered vehicle is personally owned and has a handicap/disabled license plate, see attached. Clearly indicating that the vehicle in question is not a commercial vehicle as you keep inferring. I feel I have been more than reasonable and have provided more than enough information attesting that my vehicle is NOT a commercial vehicle and that it was purchased for transportation of myself along with my service dog. As of this email I have also not been given a time for the next board meeting which I requested in my July 2nd email. Please stop sending me inaccurate violation letters as part of my disability is exacerbated by stress and you are directly contributing to my pain and suffering.

5.21   Despite the plethora of documentation submitted to the Defendants establishing that Special Agent (ret.) Nilsson's vehicle was a handicap accessible van, on June 28, 2021, Defendants issued Plaintiff what they titled a **Final Notice** demanding that she remove her vehicle within 14 days.  This Notice threatened Plaintiff with legal and attorneys' fees and other subsequent expenses if she did not comply with their edict.

5.22   In response to this Final Notice, Plaintiff wrote the Defendants informing them that she had filed complaints with the U.S. Department of Housing and Urban Development. She also reminded the Defendants that she had requested a session with the HOA Board and had not even received a reply to her request.

5.23   On July 21, 2021, Plaintiff attended a meeting of the Defendant HOA Board of Directors where her request for accommodation was supposed to be discussed.  In blatant violation of the Fair Housing Act, the Defendant Board refused to approve Plaintiff's request for accommodation.

5.24   As a result of Defendants' actions, Plaintiff has suffered humiliation, mental suffering, embarrassment, and emotional injury.

5.25   The actions of Defendants being taken willfully, maliciously and/or with reckless disregard for the rights of Plaintiff justify an award of punitive damages.

## VI.     FIRST CLAIM FOR RELIEF – REFUSAL TO REASONABLY ACCOMMODATE IN VIOLATION OF THE FEDERAL FAIR HOUSING ACT

6.01    The failure and refusal of Defendants to allow Plaintiff to park her handicap accessible vehicle in her own driveway constitutes a refusal to accommodate Plaintiff in violation of 42 U.S.C. §3604(f)(2) and §3604(f)(3)(B).

6.02    Plaintiff will suffer irreparable injury in the event that injunctive relief does not issue to allow her the right to park her handicap accessible van in her driveway.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests as follows:

A.    That temporary, preliminary and permanent injunctive relief be awarded in favor of Plaintiff and against Defendants, prohibiting Defendants from continuing to discriminate against Plaintiff and others similarly situated;

B.    That Plaintiff be awarded actual damages to compensate for the emotional injuries that she has suffered resulting from Defendants' conduct, and for the loss of the right to be free from discrimination in real estate transactions;

C.    That Plaintiff be awarded punitive damages against each of the Defendants, upon a finding that said Defendant acted willfully, wantonly, and/or with reckless disregard for the rights of Plaintiff;

D.    That Plaintiff be awarded her reasonable attorneys' fees and costs related to the case; and

F.    That this Court grant Plaintiff such additional relief as it sees fit and just.

DATED this 29th day of July, 2021.

LAW OFFICE OF PAUL GATTONE

By: /s *Paul Gattone*,
   Paul Gattone, AZ Bar No. 012482
   gattonecivilrightslaw@gmail.com
   301 South Convent Avenue
   Tucson, Arizona 85701
   Tel: (520) 623-1922 / Fax: (520) 882-3066

COMPLAINT - 11

MacDONALD HOAGUE & BAYLESS

By: *s/ Jeffrey L Taren*
Jeffrey L Taren, WSBA #50275
*Pro hac vice pending*
JeffreyT@MHB.com

*Attorneys for Plaintiff*

COMPLAINT - 12